# E X H I B I T   A

## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This is a CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE (the "Agreement") entered into by and between Michael Nesseralla ("Nesseralla") and American Asphalt Paving, LLC ("AAP").

## BACKGROUND

On or about June 22, 2015, Nesseralla, a former employee of AAP, filed a collective action against AAP, styled as *Michael Nesseralla, individually & on behalf of all similarly situated, v. American Asphalt Paving, LLC*, Case No. 8:15-cv-01464-VMC-MAP (M.D. Fla.) (the "Nesseralla Litigation"), in which it was alleged that AAP violated the Fair Labor Standards Act (the "FLSA"). AAP denies any and all liability to Nesseralla and the alleged similarly situated employees, and asserts various defenses as to the claims.

Nesseralla and AAP desire to enter into this Agreement to provide, among other things, for a reasonable settlement and full discharge of any and all disputes brought or which could have been brought by the parties.

## SPECIFIC PROVISIONS

In exchange for the mutual promises contained herein and for other good and valuable consideration, the receipt of which is expressly acknowledged, the parties agree as follows:

1.      **AAP's Payment to Nesseralla.**

A.      AAP agrees to pay Nesseralla the total gross sum of <u>Seven Thousand Dollars $7,000,</u> (the "Settlement Sum") in full compromise and settlement of any and all claims Nesseralla had, has, or may have against AAP. AAP agrees to provide the Settlement Sum to Nesseralla's attorney, Bernard R. Mazaheri, of Morgan & Morgan within 10 days after the Agreement is approved by the Court. The parties agree that the Settlement Sum shall be paid as follows:

(i)      <u>Unpaid Wages</u>. AAP shall pay to Nesseralla <u>$1,000.</u> in full settlement of any claims Nesseralla may have against AAP for unpaid wages according to the terms and conditions set forth in this Agreement. This sum will be paid by a check made payable to "Michael Nesseralla." The parties acknowledge and agree that this portion of the Settlement Sum is paid as a result of a disputed claim for unpaid wages and, therefore, AAP will issue a Form W-2 to Nesseralla in connection with the payment of this portion of the Settlement Sum. Further, AAP will withhold from this portion of the Settlement Sum all federal taxes or other standard withholdings.

(ii)      <u>Liquidated Damages; Consideration for General Release and Other Obligations of Nesseralla</u>. AAP shall pay to Nesseralla <u>$1,000.</u> in full settlement of any claims Nesseralla may have against AAP for liquidated damages and AAP shall pay to Nesseralla <u>$500.</u> as consideration for the general release and other obligations of Nesseralla, according to the terms and conditions set forth in this Agreement. This sum will be paid by a check made payable to "Michael Nesseralla." The parties acknowledge and agree that this portion of the Settlement Sum represents compensation for liquidated damages and as consideration for the general release and other obligations of Nesseralla; therefore, as to this portion of the Settlement Sum, AAP will issue a Form 1099 to Nesseralla and will not make any deductions or withholdings. If the taxability of this portion of the Settlement Sum is challenged by the

Internal Revenue Service or any other person or entity, and it is determined to be taxable to AAP, then Nesseralla agrees that he is solely responsible for payment of any taxes that may be due on that sum. Nesseralla further agrees to indemnify AAP against any claims by any person or entity that AAP wrongfully failed to withhold or contribute any monies from those portions of the Settlement Sum, or failed to pay any amount due on them (including the reimbursement of any attorneys' fees and costs incurred by AAP in defending such claims).

(iii)   <u>Attorneys' Fees and Costs</u>.  AAP shall pay to Nesseralla a gross sum of <u>$4,500</u> in full settlement of any claims Nesseralla has, had, or may have as to the recovery of his attorneys' fees and costs for his claims.  This sum will be paid by a check made payable to "Morgan & Morgan, P.A." The parties acknowledge and agree that this portion of the Settlement Sum represents compensation for attorneys' fees and costs incurred by Nesseralla and, therefore, as to this portion of the Settlement Sum, AAP will issue a Form 1099 to Nesseralla and Morgan & Morgan, and will not make any deductions or withholdings.

B.     Notwithstanding that the Settlement Sum is paid for unpaid wages, liquidated damages, consideration for the general release and other obligations of Nesseralla, and attorneys' fees and costs, Nesseralla agrees to release AAP from any and all other damages from claims released in Section 3 below.

C.     Nesseralla understands that the Settlement Sum shall constitute the sole financial obligation of AAP to Nesseralla under the terms of this Agreement with respect to claims released herein.

D.     Nesseralla and his attorney shall each provide AAP with executed W-9 forms so that the payments described in Paragraphs 1(A) can be issued.

## 2.     <u>Nesseralla's Obligations to AAP</u>.

A.     In further consideration of the benefits conferred to Nesseralla under this Agreement and as described in Section 1 above, within ten (10) business days of the date this Agreement becomes fully executed by the parties, Nesseralla will jointly file with AAP a motion seeking approval of the settlement and dismissal of the Nesseralla Litigation with prejudice.

B.     Nesseralla represents and warrants to AAP that, other than the Nesseralla Litigation, he has no pending charges, complaints, claims, or actions against AAP, or any existing or former owner, employee, agent, or representative of AAP, that would be precluded by the release in Section 3, below. In addition, Nesseralla represents that he has not assigned to any person or entity any claim or action he has, or may have, against AAP.  Nothing in this Agreement shall interfere with Nesseralla's right to file a charge or cooperate or participate in an investigation or proceeding conducted by the Equal Employment Opportunity Commission and/or other federal, state, or local regulatory or law enforcement agency.  However, the consideration provided to Nesseralla in this Agreement shall be the sole relief provided to Nesseralla for the claims that are released by Nesseralla herein and Nesseralla will not be entitled to recover and agrees to waive any monetary benefits or recovery against AAP in connection with any such claim, charge, or proceeding without regard to who has brought such complaint or charge.

C.     Nesseralla agrees not to seek, apply for, or accept any employment with AAP.  Should Nesseralla seek employment with AAP, in the future and be denied employment, Nesseralla agrees that such denial would not constitute retaliation in violation of any law.

2

D.     Nesseralla agrees that he will not voluntarily provide assistance, documents, or testimony to or for current and/or former employees of AAP who have disputes against AAP for which Nesseralla may be a witness or have knowledge of discoverable information and that Nesseralla will only provide documents or testimony if legally compelled to do so by subpoena or court order.

E.     Nesseralla agrees to be bound by the release provisions contained in Section 3, below.

F.     Nesseralla agrees to abide by the confidentiality provisions contained in Section 4, below.

**3.     General Release by Nesseralla.**

A.     Nesseralla hereby releases and forever discharges AAP (including AAP and its predecessors, parents, subsidiaries, affiliated organizations, benefit plans, benefit plan administrators, benefit plan fiduciaries, and their respective successors and assigns together with their respective owners, directors, officers, employees, agents, attorneys, representatives, shareholders, and their respective heirs and personal representatives) from any and all claims he has, had, or hereafter may have against AAP based upon his employment with AAP.

B.     Nesseralla further agrees to, and hereby does, release and forever discharge AAP (including AAP and its predecessors, parents, subsidiaries, affiliated organizations, benefit plans, benefit plan administrators, benefit plan fiduciaries, and their respective successors and assigns together with their respective owners, directors, officers, employees, agents, attorneys, representatives, shareholders, and their respective heirs and personal representatives) from any and all actions, including contract actions, tort actions, statutory actions (including, without limitation, claims under the Fair Labor Standards Act of 1938, as amended; the Florida Minimum Wage Law; Family and Medical Leave Act of 1993; Title VII of the Civil Rights Act of 1964, as amended, 42 United States Code Sections 2000-e *et. seq.*; the Florida Civil Rights Act of 1992; the Rehabilitation Act of 1973; the Employee Retirement and Income Security Act of 1974; the Americans with Disabilities Act of 1990; the Civil Rights Acts of 1866 and 1991; the National Labor Relations Act, as amended; the Equal Pay Act of 1963), and various state and local laws, administrative actions, and constitutional claims, as well as all claims for costs, expenses, or attorneys' fees, for which Nesseralla had, has, or hereafter may have against AAP, including, but not limited to any and all claims, damages, or losses, known or unknown, directly or indirectly sustained by Nesseralla in connection with any matter arising out of his employment with AAP or any other relationship with AAP, or any other facts or occurrences from the beginning of time up to and including the date and time Nesseralla executes this Agreement.

**4.     Confidentiality.**  Nesseralla agrees that he will not divulge, communicate, or otherwise disclose, directly or indirectly, to any person or entity, either (i) the fact that the parties have settled Nesseralla's claims against AAP; (ii) the existence or terms of this Agreement, or the Agreement's negotiation, execution, or implementation; or (iii) Nesseralla's claims against AAP in the Nesseralla Litigation.  If Nesseralla is questioned about the status of the litigation, he may respond that he is no longer pursuing the litigation.  The parties agree that nothing in this paragraph prohibits Nesseralla from disclosing the settlement or the terms of this Agreement to his attorneys, accountants, or to any government agency as may be required by law, as long as he instructs his attorneys and accountants to keep the information confidential.  The parties further agree that disclosure of this Agreement to the Court, should the Court require that it be filed publicly, will not be considered a breach of this Confidentiality provision.

PD.18018575.1

5. **Non-admission of Liability.** The parties acknowledge and agree that the settlement of Nesseralla's claims (i) does not constitute any admission of liability by AAP; (ii) does not constitute an admission by AAP of the validity of any of Nesseralla's legal or factual contentions; and (iii) is solely for the purpose of avoiding the expense and inconvenience of further proceedings between the parties.

6. **Entire Agreement.** This Agreement represents the sole and entire agreement between the parties and supersedes any and all prior agreements, negotiations, or discussions between the parties and/or their respective counsel with respect to the subject matter covered in this Agreement. The parties further agree that this Agreement may not be modified orally and that any modification of this Agreement must be in writing and signed by all parties.

7. **Informed, Voluntary Signature.** In entering into this Agreement, Nesseralla represents that, before executing this Agreement, he has completely read all the terms herein and that he fully understands and voluntarily accepts the terms after having the opportunity to consult adequate legal counsel of his choice. Nesseralla further acknowledges and agrees that he has received a reasonable period of time to consider this Agreement and that the subsequent discovery of any facts by Nesseralla, whether or not existing on the date of this Agreement and no matter how material, shall have no effect on the validity of the Agreement.

8. **Attorneys' Fees and Costs.** Other than as set forth in Section 1, above, the parties agree to bear their own attorneys' fees and costs in connection with Nesseralla's claims in the Nesseralla Litigation, and in the preparation of this Agreement. However, in the event that either party institutes an action to enforce any provision contained in this Agreement, the prevailing party shall be entitled to recover attorneys' fees and costs from the other party, including any fees and costs on any appeal(s).

9. **Miscellaneous.**

A.  The parties agree that this Agreement shall be interpreted and enforced in accordance with Florida law.

B.  If one or more paragraph(s) of this Agreement are ruled invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision of the Agreement, which shall remain in full force and effect.

C.  The parties agree that, unless required by law or a court of competent jurisdiction, this document shall remain confidential and will not be used for any purpose other than enforcing its specific terms in any proceedings between the parties. If this document must be filed in any court proceeding, the person seeking to file it will first seek to file the document under seal, and will only file it publicly if expressly prohibited from filing same under seal by the court.

D.  As used in this Agreement, the term "Nesseralla" shall mean Michael Nesseralla, as well as his heirs, personal representatives, assigns, successors, agents, and attorneys.

4

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as follows:

As to  Michael Nesseralla, this __11__ day of September, 2015.

_____          _____
Witness                                                        MICHAEL NESSERALLA


As to American Asphalt Paving, LLC, this _____ day of September, 2015.

                                                                 AMERICAN ASPHALT PAVING, LLC

_____          By:_____
Witness

                                                                 Its:_____

5

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as follows:

As to  Michael Nesseralla, this _____ day of September, 2015.


_____          _____
Witness                                     MICHAEL NESSERALLA



As to American Asphalt Paving, LLC, this __11th__ day of September, 2015.

_____          AMERICAN ASPHALT PAVING, LLC

Witness                                     By: _____

                                            Its: _____C.F.O._____

PD.18018575.1                                      5

## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This is a CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE (the "Agreement") entered into by and between Alex Long ("Long") and American Asphalt Paving, LLC ("AAP").

## BACKGROUND

Long opted into a collective action against AAP, styled as *Michael Nesseralla, individually & on behalf of all similarly situated, v. American Asphalt Paving, LLC*, Case No. 8:15-cv-01464-VMC-MAP (M.D. Fla.) (the "Nesseralla Litigation"), in which it was alleged that AAP violated the Fair Labor Standards Act (the "FLSA"). AAP denies any and all liability to Long, and asserts various defenses as to the claims.

Long and AAP desire to enter into this Agreement to provide, among other things, for a reasonable settlement and full discharge of any and all disputes brought or which could have been brought by the parties.

## SPECIFIC PROVISIONS

In exchange for the mutual promises contained herein and for other good and valuable consideration, the receipt of which is expressly acknowledged, the parties agree as follows:

1.   **AAP's Payment to Long.**

A.      AAP agrees to pay Long the total gross sum of Six Thousand Dollars ($6,000.) (the "Settlement Sum") in full compromise and settlement of any and all claims Long had, has, or may have against AAP. AAP agrees to provide the Settlement Sum to Long's attorney, Bernard R. Mazaheri, of Morgan & Morgan within 10 days after the Agreement is approved by the Court. The parties agree that the Settlement Sum shall be paid as follows:

(i)      Unpaid Wages. AAP shall pay to Long $2,250. in full settlement of any claims Long may have against AAP for unpaid wages according to the terms and conditions set forth in this Agreement. This sum will be paid by a check made payable to "Alex Long." The parties acknowledge and agree that this portion of the Settlement Sum is paid as a result of a disputed claim for unpaid wages and, therefore, AAP will issue a Form W-2 to Long in connection with the payment of this portion of the Settlement Sum. Further, AAP will withhold from this portion of the Settlement Sum all federal taxes or other standard withholdings.

(ii)      Liquidated Damages; Consideration for General Release and Other Obligations of Long. AAP shall pay to Long $2,250. in full settlement of any claims Long may have against AAP for liquidated damages and AAP shall pay to Long $500. as consideration for the general release and other obligations of Long, according to the terms and conditions set forth in this Agreement. This sum will be paid by a check made payable to "Alex Long." The parties acknowledge and agree that this portion of the Settlement Sum represents compensation for liquidated damages and as consideration for the general release and other obligations of Long; therefore, as to this portion of the Settlement Sum, AAP will issue a Form 1099 to Long and will not make any deductions or withholdings. If the taxability of this portion of the Settlement Sum is challenged by the Internal Revenue Service or any other person or entity, and it is determined to be taxable to AAP, then Long agrees that he is solely responsible for payment of any taxes that may be due on that sum. Long further agrees to indemnify AAP against any claims by any

person or entity that AAP wrongfully failed to withhold or contribute any monies from those portions of the Settlement Sum, or failed to pay any amount due on them (including the reimbursement of any attorneys' fees and costs incurred by AAP in defending such claims).

        (iii)   <u>Attorneys' Fees and Costs</u>.  AAP shall pay to Long a gross sum of <u>$1,000.</u> in full settlement of any claims Long has, had, or may have as to the recovery of his attorneys' fees and costs for his claims.  This sum will be paid by a check made payable to "Morgan & Morgan, P.A."  The parties acknowledge and agree that this portion of the Settlement Sum represents compensation for attorneys' fees and costs incurred by Long and, therefore, as to this portion of the Settlement Sum, AAP will issue a Form 1099 to Long and Morgan & Morgan, and will not make any deductions or withholdings.

        B.    Notwithstanding that the Settlement Sum is paid for unpaid wages, liquidated damages, consideration for the general release and other obligations of Long, and attorneys' fees and costs, Long agrees to release AAP from any and all other damages from claims released in Section 3 below.

        C.    Long understands that the Settlement Sum shall constitute the sole financial obligation of AAP to Long under the terms of this Agreement with respect to claims released herein.

        D.    Long and his attorney shall each provide AAP with executed W-9 forms so that the payments described in Paragraphs 1(A) can be issued.

**2.    <u>Long's Obligations to AAP</u>.**

        A.    In further consideration of the benefits conferred to Long under this Agreement and as described in Section 1 above, within ten (10) business days of the date this Agreement becomes fully executed by the parties, Long will jointly file with AAP a motion seeking approval of the settlement and dismissal of the Nesseralla Litigation with prejudice.

        B.    Long represents and warrants to AAP that, other than the Nesseralla Litigation, he has no pending charges, complaints, claims, or actions against AAP, or any existing or former owner, employee, agent, or representative of AAP, that would be precluded by the release in Section 3, below. In addition, Long represents that he has not assigned to any person or entity any claim or action he has, or may have, against AAP.  Nothing in this Agreement shall interfere with Long's right to file a charge or cooperate or participate in an investigation or proceeding conducted by the Equal Employment Opportunity Commission and/or other federal, state, or local regulatory or law enforcement agency. However, the consideration provided to Long in this Agreement shall be the sole relief provided to Long for the claims that are released by Long herein and Long will not be entitled to recover and agrees to waive any monetary benefits or recovery against AAP in connection with any such claim, charge, or proceeding without regard to who has brought such complaint or charge.

        C.    Long agrees not to seek, apply for, or accept any employment with AAP.  Should Long seek employment with AAP, in the future and be denied employment, Long agrees that such denial would not constitute retaliation in violation of any law.

        D.    Long agrees that he will not voluntarily provide assistance, documents, or testimony to or for current and/or former employees of AAP who have disputes against AAP for which Long may be a witness or have knowledge of discoverable information and that Long will only provide documents or testimony if legally compelled to do so by subpoena or court order.

2

E.      Long agrees to be bound by the release provisions contained in Section 3, below.

F.      Long agrees to abide by the confidentiality provisions contained in Section 4, below.

**3.      General Release by Long.**

A.      Long hereby releases and forever discharges AAP (including AAP and its predecessors, parents, subsidiaries, affiliated organizations, benefit plans, benefit plan administrators, benefit plan fiduciaries, and their respective successors and assigns together with their respective owners, directors, officers, employees, agents, attorneys, representatives, shareholders, and their respective heirs and personal representatives) from any and all claims he has, had, or hereafter may have against AAP based upon his employment with AAP.

B.      Long further agrees to, and hereby does, release and forever discharge AAP (including AAP and its predecessors, parents, subsidiaries, affiliated organizations, benefit plans, benefit plan administrators, benefit plan fiduciaries, and their respective successors and assigns together with their respective owners, directors, officers, employees, agents, attorneys, representatives, shareholders, and their respective heirs and personal representatives) from any and all actions, including contract actions, tort actions, statutory actions (including, without limitation, claims under the Fair Labor Standards Act of 1938, as amended; the Florida Minimum Wage Law; Family and Medical Leave Act of 1993; Title VII of the Civil Rights Act of 1964, as amended, 42 United States Code Sections 2000-e *et. seq.*; the Florida Civil Rights Act of 1992; the Rehabilitation Act of 1973; the Employee Retirement and Income Security Act of 1974; the Americans with Disabilities Act of 1990; the Civil Rights Acts of 1866 and 1991; the National Labor Relations Act, as amended; the Equal Pay Act of 1963), and various state and local laws, administrative actions, and constitutional claims, as well as all claims for costs, expenses, or attorneys' fees, for which Long had, has, or hereafter may have against AAP, including, but not limited to any and all claims, damages, or losses, known or unknown, directly or indirectly sustained by Long in connection with any matter arising out of his employment with AAP or any other relationship with AAP, or any other facts or occurrences from the beginning of time up to and including the date and time Long executes this Agreement.

**4.      Confidentiality.**   Long agrees that he will not divulge, communicate, or otherwise disclose, directly or indirectly, to any person or entity, either (i) the fact that the parties have settled Long's claims against AAP; (ii) the existence or terms of this Agreement, or the Agreement's negotiation, execution, or implementation; or (iii) Long's claims against AAP in the Nesseralla Litigation.  If Long is questioned about the status of the litigation, he may respond that he is no longer pursuing the litigation.  The parties agree that nothing in this paragraph prohibits Long from disclosing the settlement or the terms of this Agreement to his attorneys, accountants, or to any government agency as may be required by law, as long as he instructs his attorneys and accountants to keep the information confidential.  The parties further agree that disclosure of this Agreement to the Court, should the Court require that it be filed publicly, will not be considered a breach of this Confidentiality provision.

**5.      Non-admission of Liability.**   The parties acknowledge and agree that the settlement of Long's claims (i) does not constitute any admission of liability by AAP; (ii) does not constitute an admission by AAP of the validity of any of Long's legal or factual contentions; and (iii) is solely for the purpose of avoiding the expense and inconvenience of further proceedings between the parties.

PD.18018577.1

6.     **Entire Agreement.**  This Agreement represents the sole and entire agreement between the parties and supersedes any and all prior agreements, negotiations, or discussions between the parties and/or their respective counsel with respect to the subject matter covered in this Agreement.  The parties further agree that this Agreement may not be modified orally and that any modification of this Agreement must be in writing and signed by all parties.

7.     **Informed, Voluntary Signature.**  In entering into this Agreement, Long represents that, before executing this Agreement, he has completely read all the terms herein and that he fully understands and voluntarily accepts the terms after having the opportunity to consult adequate legal counsel of his choice.  Long further acknowledges and agrees that he has received a reasonable period of time to consider this Agreement and that the subsequent discovery of any facts by Long, whether or not existing on the date of this Agreement and no matter how material, shall have no effect on the validity of the Agreement.

8.     **Attorneys' Fees and Costs.**  Other than as set forth in Section 1, above, the parties agree to bear their own attorneys' fees and costs in connection with Long's claims in the Nesseralla Litigation, and in the preparation of this Agreement.  However, in the event that either party institutes an action to enforce any provision contained in this Agreement, the prevailing party shall be entitled to recover attorneys' fees and costs from the other party, including any fees and costs on any appeal(s).

9.     **Miscellaneous.**

A.     The parties agree that this Agreement shall be interpreted and enforced in accordance with Florida law.

B.     If one or more paragraph(s) of this Agreement are ruled invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision of the Agreement, which shall remain in full force and effect.

C.     The parties agree that, unless required by law or a court of competent jurisdiction, this document shall remain confidential and will not be used for any purpose other than enforcing its specific terms in any proceedings between the parties.  If this document must be filed in any court proceeding, the person seeking to file it will first seek to file the document under seal, and will only file it publicly if expressly prohibited from filing same under seal by the court.

D.     As used in this Agreement, the term "Long" shall mean Alex Long, as well as his heirs, personal representatives, assigns, successors, agents, and attorneys.

PD.18018577.1

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as follows:

As to  Alex Long, this __11__ day of September, 2015.

_____          _____
Witness                                                     ALEX LONG


As to American Asphalt Paving, LLC, this _____ day of September, 2015.

                                                              AMERICAN ASPHALT PAVING, LLC

_____          By:_____
Witness

                                                              Its:_____

5

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as follows:

As to  Alex Long, this _____ day of September, 2015.


_____          _____
Witness                                   ALEX LONG



As to American Asphalt Paving, LLC, this __11th__ day of September, 2015.

_____          AMERICAN ASPHALT PAVING, LLC
Witness                                   By: _____

                                          Its: _____C.F.O._____

5

## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This is a CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE (the "Agreement") entered into by and between Edward Hancock ("Hancock") and American Asphalt Paving, LLC ("AAP").

## BACKGROUND

Hancock opted into a collective action against AAP, styled as *Michael Nesseralla, individually & on behalf of all similarly situated, v. American Asphalt Paving, LLC*, Case No. 8:15-cv-01464-VMC-MAP (M.D. Fla.) (the "Nesseralla Litigation"), in which it was alleged that AAP violated the Fair Labor Standards Act (the "FLSA"). AAP denies any and all liability to Hancock, and asserts various defenses as to the claims.

Hancock and AAP desire to enter into this Agreement to provide, among other things, for a reasonable settlement and full discharge of any and all disputes brought or which could have been brought by the parties.

## SPECIFIC PROVISIONS

In exchange for the mutual promises contained herein and for other good and valuable consideration, the receipt of which is expressly acknowledged, the parties agree as follows:

1.  **AAP's Payment to Hancock.**

A.      AAP agrees to pay Hancock the total gross sum of <u>Six Thousand Dollars ($6,000.)</u> (the "Settlement Sum") in full compromise and settlement of any and all claims Hancock had, has, or may have against AAP. AAP agrees to provide the Settlement Sum to Hancock's attorney, Bernard R. Mazaheri, of Morgan & Morgan within 10 days after the Agreement is approved by the Court. The parties agree that the Settlement Sum shall be paid as follows:

(i)      <u>Unpaid Wages.</u>  AAP shall pay to Hancock <u>$2,250.</u> in full settlement of any claims Hancock may have against AAP for unpaid wages according to the terms and conditions set forth in this Agreement. This sum will be paid by a check made payable to "Edward Hancock." The parties acknowledge and agree that this portion of the Settlement Sum is paid as a result of a disputed claim for unpaid wages and, therefore, AAP will issue a Form W-2 to Hancock in connection with the payment of this portion of the Settlement Sum. Further, AAP will withhold from this portion of the Settlement Sum all federal taxes or other standard withholdings.

(ii)      <u>Liquidated Damages; Consideration for General Release and Other Obligations of Hancock.</u>  AAP shall pay to Hancock <u>$2,250.</u> in full settlement of any claims Hancock may have against AAP for liquidated damages and AAP shall pay to Hancock <u>$500.</u> as consideration for the general release and other obligations of Hancock, according to the terms and conditions set forth in this Agreement. This sum will be paid by a check made payable to "Edward Hancock." The parties acknowledge and agree that this portion of the Settlement Sum represents compensation for liquidated damages and as consideration for the general release and other obligations of Hancock; therefore, as to this portion of the Settlement Sum, AAP will issue a Form 1099 to Hancock and will not make any deductions or withholdings. If the taxability of this portion of the Settlement Sum is challenged by the Internal Revenue Service or any other person or entity, and it is determined to be taxable to AAP, then

Hancock agrees that he is solely responsible for payment of any taxes that may be due on that sum. Hancock further agrees to indemnify AAP against any claims by any person or entity that AAP wrongfully failed to withhold or contribute any monies from those portions of the Settlement Sum, or failed to pay any amount due on them (including the reimbursement of any attorneys' fees and costs incurred by AAP in defending such claims).

(iii)   Attorneys' Fees and Costs.  AAP shall pay to Hancock a gross sum of $1,000. in full settlement of any claims Hancock has, had, or may have as to the recovery of his attorneys' fees and costs for his claims.  This sum will be paid by a check made payable to "Morgan & Morgan, P.A."  The parties acknowledge and agree that this portion of the Settlement Sum represents compensation for attorneys' fees and costs incurred by Hancock and, therefore, as to this portion of the Settlement Sum, AAP will issue a Form 1099 to Hancock and Morgan & Morgan, and will not make any deductions or withholdings.

B.     Notwithstanding that the Settlement Sum is paid for unpaid wages, liquidated damages, consideration for the general release and other obligations of Hancock, and attorneys' fees and costs, Hancock agrees to release AAP from any and all other damages from claims released in Section 3 below.

C.     Hancock understands that the Settlement Sum shall constitute the sole financial obligation of AAP to Hancock under the terms of this Agreement with respect to claims released herein.

D.     Hancock and his attorney shall each provide AAP with executed W-9 forms so that the payments described in Paragraphs 1(A) can be issued.

## 2.   Hancock's Obligations to AAP.

A.     In further consideration of the benefits conferred to Hancock under this Agreement and as described in Section 1 above, within ten (10) business days of the date this Agreement becomes fully executed by the parties, Hancock will jointly file with AAP a motion seeking approval of the settlement and dismissal of the Nesseralla Litigation with prejudice.

B.     Hancock represents and warrants to AAP that, other than the Nesseralla Litigation, he has no pending charges, complaints, claims, or actions against AAP, or any existing or former owner, employee, agent, or representative of AAP, that would be precluded by the release in Section 3, below. In addition, Hancock represents that he has not assigned to any person or entity any claim or action he has, or may have, against AAP.  Nothing in this Agreement shall interfere with Hancock's right to file a charge or cooperate or participate in an investigation or proceeding conducted by the Equal Employment Opportunity Commission and/or other federal, state, or local regulatory or law enforcement agency. However, the consideration provided to Hancock in this Agreement shall be the sole relief provided to Hancock for the claims that are released by Hancock herein and Hancock will not be entitled to recover and agrees to waive any monetary benefits or recovery against AAP in connection with any such claim, charge, or proceeding without regard to who has brought such complaint or charge.

C.     Hancock agrees not to seek, apply for, or accept any employment with AAP.  Should Hancock seek employment with AAP, in the future and be denied employment, Hancock agrees that such denial would not constitute retaliation in violation of any law.

D.     Hancock agrees that he will not voluntarily provide assistance, documents, or testimony to or for current and/or former employees of AAP who have disputes against AAP for which Hancock may be a witness or have knowledge of discoverable information and that Hancock will only provide documents or testimony if legally compelled to do so by subpoena or court order.

E.     Hancock agrees to be bound by the release provisions contained in Section 3, below.

F.     Hancock agrees to abide by the confidentiality provisions contained in Section 4, below.

**3.     General Release by Hancock.**

A.     Hancock hereby releases and forever discharges AAP (including AAP and its predecessors, parents, subsidiaries, affiliated organizations, benefit plans, benefit plan administrators, benefit plan fiduciaries, and their respective successors and assigns together with their respective owners, directors, officers, employees, agents, attorneys, representatives, shareholders, and their respective heirs and personal representatives) from any and all claims he has, had, or hereafter may have against AAP based upon his employment with AAP.

B.     Hancock further agrees to, and hereby does, release and forever discharge AAP (including AAP and its predecessors, parents, subsidiaries, affiliated organizations, benefit plans, benefit plan administrators, benefit plan fiduciaries, and their respective successors and assigns together with their respective owners, directors, officers, employees, agents, attorneys, representatives, shareholders, and their respective heirs and personal representatives) from any and all actions, including contract actions, tort actions, statutory actions (including, without limitation, claims under the Fair Labor Standards Act of 1938, as amended; the Florida Minimum Wage Law; Family and Medical Leave Act of 1993; Title VII of the Civil Rights Act of 1964, as amended, 42 United States Code Sections 2000-e *et. seq.*; the Florida Civil Rights Act of 1992; the Rehabilitation Act of 1973; the Employee Retirement and Income Security Act of 1974; the Americans with Disabilities Act of 1990; the Civil Rights Acts of 1866 and 1991; the National Labor Relations Act, as amended; the Equal Pay Act of 1963), and various state and local laws, administrative actions, and constitutional claims, as well as all claims for costs, expenses, or attorneys' fees, for which Hancock had, has, or hereafter may have against AAP, including, but not limited to any and all claims, damages, or losses, known or unknown, directly or indirectly sustained by Hancock in connection with any matter arising out of his employment with AAP or any other relationship with AAP, or any other facts or occurrences from the beginning of time up to and including the date and time Hancock executes this Agreement.

**4.     Confidentiality.**  Hancock agrees that he will not divulge, communicate, or otherwise disclose, directly or indirectly, to any person or entity, either (i) the fact that the parties have settled Hancock's claims against AAP; (ii) the existence or terms of this Agreement, or the Agreement's negotiation, execution, or implementation; or (iii) Hancock's claims against AAP in the Nesseralla Litigation.  If Hancock is questioned about the status of the litigation, he may respond that he is no longer pursuing the litigation.  The parties agree that nothing in this paragraph prohibits Hancock from disclosing the settlement or the terms of this Agreement to his attorneys, accountants, or to any government agency as may be required by law, as long as he instructs his attorneys and accountants to keep the information confidential.  The parties further agree that disclosure of this Agreement to the Court, should the Court require that it be filed publicly, will not be considered a breach of this Confidentiality provision.

3

5.  **Non-admission of Liability.**  The parties acknowledge and agree that the settlement of Hancock's claims (i) does not constitute any admission of liability by AAP; (ii) does not constitute an admission by AAP of the validity of any of Hancock's legal or factual contentions; and (iii) is solely for the purpose of avoiding the expense and inconvenience of further proceedings between the parties.

6.  **Entire Agreement.**  This Agreement represents the sole and entire agreement between the parties and supersedes any and all prior agreements, negotiations, or discussions between the parties and/or their respective counsel with respect to the subject matter covered in this Agreement.  The parties further agree that this Agreement may not be modified orally and that any modification of this Agreement must be in writing and signed by all parties.

7.  **Opportunity for Review/Right of Revocation.**  The parties acknowledge and agree that Hancock was provided a period of 21 days to review this Agreement before signing it.  Hancock also agrees that, if Hancock executes the Agreement prior to the expiration of the 21-day review period, Hancock waives the remainder of the 21-day review period.  In addition, the parties acknowledge and agree that Hancock has a period of seven days after the date Hancock signs this Agreement within which Hancock may revoke the Agreement.  Hancock agrees that AAP encouraged Hancock to seek and consult with adequate legal counsel regarding the terms of this Agreement prior to signing it.  The parties agree that AAP shall not be obligated to pay any portion of the Settlement Sum to Hancock if Hancock revokes any aspect of this Agreement within the seven-day revocation period.

8.  **Informed, Voluntary Signature.**  In entering into this Agreement, Hancock represents that, before executing this Agreement, he has completely read all the terms herein and that he fully understands and voluntarily accepts the terms after having the opportunity to consult adequate legal counsel of his choice.  Hancock further acknowledges and agrees that he has received a reasonable period of time to consider this Agreement and that the subsequent discovery of any facts by Hancock, whether or not existing on the date of this Agreement and no matter how material, shall have no effect on the validity of the Agreement.

9.  **Attorneys' Fees and Costs.**  Other than as set forth in Section 1, above, the parties agree to bear their own attorneys' fees and costs in connection with Hancock's claims in the Nesseralla Litigation, and in the preparation of this Agreement.  However, in the event that either party institutes an action to enforce any provision contained in this Agreement, the prevailing party shall be entitled to recover attorneys' fees and costs from the other party, including any fees and costs on any appeal(s).

10. **Miscellaneous.**

A.  The parties agree that this Agreement shall be interpreted and enforced in accordance with Florida law.

B.  If one or more paragraph(s) of this Agreement are ruled invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision of the Agreement, which shall remain in full force and effect.

C.  The parties agree that, unless required by law or a court of competent jurisdiction, this document shall remain confidential and will not be used for any purpose other than enforcing its specific terms in any proceedings between the parties.  If this document must be filed in any court proceeding, the person seeking to file it will first seek to file the document under seal, and will only file it publicly if expressly prohibited from filing same under seal by the court.

4

D.      As used in this Agreement, the term "Hancock" shall mean Edward Hancock, as well as his heirs, personal representatives, assigns, successors, agents, and attorneys.


IN WITNESS WHEREOF, the parties hereto have executed this Agreement as follows:

As to  Edward Hancock, this ____ day of September, 2015.

_____        _____
Witness                                                          EDWARD HANCOCK


As to American Asphalt Paving, LLC, this _____ day of September, 2015.

                                                         AMERICAN ASPHALT PAVING, LLC

_____        By:_____
Witness

                                                         Its:_____

PD.18018845.1

D.      As used in this Agreement, the term "Hancock" shall mean Edward Hancock, as well as his heirs, personal representatives, assigns, successors, agents, and attorneys.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as follows:

As to  Edward Hancock, this _11th_ day of September, 2015.

_____          _____
Witness                                                         EDWARD HANCOCK

As to American Asphalt Paving, LLC, this _11th_ day of September, 2015.

_____          AMERICAN ASPHALT PAVING, LLC
Witness                                                         By: _____

                                                                         Its: ___C. F. O._____

PD.18018845.1

5

**CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE**

This is a CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE (the "Agreement") entered into by and between Peter Hancock ("Hancock") and American Asphalt Paving, LLC ("AAP").

**BACKGROUND**

Hancock opted into a collective action against AAP, styled as *Michael Nesseralla, individually & on behalf of all similarly situated, v. American Asphalt Paving, LLC,* Case No. 8:15-cv-01464-VMC-MAP (M.D. Fla.) (the "Nesseralla Litigation"), in which it was alleged that AAP violated the Fair Labor Standards Act (the "FLSA"). AAP denies any and all liability to Hancock, and asserts various defenses as to the claims.

Hancock and AAP desire to enter into this Agreement to provide, among other things, for a reasonable settlement and full discharge of any and all disputes brought or which could have been brought by the parties.

**SPECIFIC PROVISIONS**

In exchange for the mutual promises contained herein and for other good and valuable consideration, the receipt of which is expressly acknowledged, the parties agree as follows:

1.     **AAP's Payment to Hancock.**

A.     AAP agrees to pay Hancock the total gross sum of <u>Six Thousand Dollars ($6,000.)</u> (the "Settlement Sum") in full compromise and settlement of any and all claims Hancock had, has, or may have against AAP. AAP agrees to provide the Settlement Sum to Hancock's attorney, Bernard R. Mazaheri, of Morgan & Morgan within 10 days after the Agreement is approved by the Court. The parties agree that the Settlement Sum shall be paid as follows:

(i)     <u>Unpaid Wages.</u>  AAP shall pay to Hancock <u>$2,250.</u> in full settlement of any claims Hancock may have against AAP for unpaid wages according to the terms and conditions set forth in this Agreement. This sum will be paid by a check made payable to "Peter Hancock." The parties acknowledge and agree that this portion of the Settlement Sum is paid as a result of a disputed claim for unpaid wages and, therefore, AAP will issue a Form W-2 to Hancock in connection with the payment of this portion of the Settlement Sum. Further, AAP will withhold from this portion of the Settlement Sum all federal taxes or other standard withholdings.

(ii)     <u>Liquidated Damages; Consideration for General Release and Other Obligations of Hancock.</u>  AAP shall pay to Hancock <u>$2,250.</u> in full settlement of any claims Hancock may have against AAP for liquidated damages and AAP shall pay to Hancock <u>$500.</u> as consideration for the general release and other obligations of Hancock, according to the terms and conditions set forth in this Agreement. This sum will be paid by a check made payable to "Peter Hancock." The parties acknowledge and agree that this portion of the Settlement Sum represents compensation for liquidated damages and as consideration for the general release and other obligations of Hancock; therefore, as to this portion of the Settlement Sum, AAP will issue a Form 1099 to Hancock and will not make any deductions or withholdings. If the taxability of this portion of the Settlement Sum is challenged by the Internal Revenue Service or any other person or entity, and it is determined to be taxable to AAP, then Hancock agrees that he is solely responsible for payment of any taxes that may be due on that sum.

Hancock further agrees to indemnify AAP against any claims by any person or entity that AAP wrongfully failed to withhold or contribute any monies from those portions of the Settlement Sum, or failed to pay any amount due on them (including the reimbursement of any attorneys' fees and costs incurred by AAP in defending such claims).

      (iii)   Attorneys' Fees and Costs. AAP shall pay to Hancock a gross sum of $1,000. in full settlement of any claims Hancock has, had, or may have as to the recovery of his attorneys' fees and costs for his claims. This sum will be paid by a check made payable to "Morgan & Morgan, P.A." The parties acknowledge and agree that this portion of the Settlement Sum represents compensation for attorneys' fees and costs incurred by Hancock and, therefore, as to this portion of the Settlement Sum, AAP will issue a Form 1099 to Hancock and Morgan & Morgan, and will not make any deductions or withholdings.

B.    Notwithstanding that the Settlement Sum is paid for unpaid wages, liquidated damages, consideration for the general release and other obligations of Hancock, and attorneys' fees and costs, Hancock agrees to release AAP from any and all other damages from claims released in Section 3 below.

C.    Hancock understands that the Settlement Sum shall constitute the sole financial obligation of AAP to Hancock under the terms of this Agreement with respect to claims released herein.

D.    Hancock and his attorney shall each provide AAP with executed W-9 forms so that the payments described in Paragraphs 1(A) can be issued.

**2.   Hancock's Obligations to AAP.**

A.    In further consideration of the benefits conferred to Hancock under this Agreement and as described in Section 1 above, within ten (10) business days of the date this Agreement becomes fully executed by the parties, Hancock will jointly file with AAP a motion seeking approval of the settlement and dismissal of the Nesseralla Litigation with prejudice.

B.    Hancock represents and warrants to AAP that, other than the Nesseralla Litigation, he has no pending charges, complaints, claims, or actions against AAP, or any existing or former owner, employee, agent, or representative of AAP, that would be precluded by the release in Section 3, below. In addition, Hancock represents that he has not assigned to any person or entity any claim or action he has, or may have, against AAP. Nothing in this Agreement shall interfere with Hancock's right to file a charge or cooperate or participate in an investigation or proceeding conducted by the Equal Employment Opportunity Commission and/or other federal, state, or local regulatory or law enforcement agency. However, the consideration provided to Hancock in this Agreement shall be the sole relief provided to Hancock for the claims that are released by Hancock herein and Hancock will not be entitled to recover and agrees to waive any monetary benefits or recovery against AAP in connection with any such claim, charge, or proceeding without regard to who has brought such complaint or charge.

C.    Hancock agrees not to seek, apply for, or accept any employment with AAP. Should Hancock seek employment with AAP, in the future and be denied employment, Hancock agrees that such denial would not constitute retaliation in violation of any law.

D.    Hancock agrees that he will not voluntarily provide assistance, documents, or testimony to or for current and/or former employees of AAP who have disputes against AAP for which Hancock

may be a witness or have knowledge of discoverable information and that Hancock will only provide documents or testimony if legally compelled to do so by subpoena or court order.

E.      Hancock agrees to be bound by the release provisions contained in Section 3, below.

F.      Hancock agrees to abide by the confidentiality provisions contained in Section 4, below.

**3.      General Release by Hancock.**

A.      Hancock hereby releases and forever discharges AAP (including AAP and its predecessors, parents, subsidiaries, affiliated organizations, benefit plans, benefit plan administrators, benefit plan fiduciaries, and their respective successors and assigns together with their respective owners, directors, officers, employees, agents, attorneys, representatives, shareholders, and their respective heirs and personal representatives) from any and all claims he has, had, or hereafter may have against AAP based upon his employment with AAP.

B.      Hancock further agrees to, and hereby does, release and forever discharge AAP (including AAP and its predecessors, parents, subsidiaries, affiliated organizations, benefit plans, benefit plan administrators, benefit plan fiduciaries, and their respective successors and assigns together with their respective owners, directors, officers, employees, agents, attorneys, representatives, shareholders, and their respective heirs and personal representatives) from any and all actions, including contract actions, tort actions, statutory actions (including, without limitation, claims under the Fair Labor Standards Act of 1938, as amended; the Florida Minimum Wage Law; Family and Medical Leave Act of 1993; Title VII of the Civil Rights Act of 1964, as amended, 42 United States Code Sections 2000-e *et. seq.*; the Florida Civil Rights Act of 1992; the Rehabilitation Act of 1973; the Employee Retirement and Income Security Act of 1974; the Americans with Disabilities Act of 1990; the Civil Rights Acts of 1866 and 1991; the National Labor Relations Act, as amended; the Equal Pay Act of 1963), and various state and local laws, administrative actions, and constitutional claims, as well as all claims for costs, expenses, or attorneys' fees, for which Hancock had, has, or hereafter may have against AAP, including, but not limited to any and all claims, damages, or losses, known or unknown, directly or indirectly sustained by Hancock in connection with any matter arising out of his employment with AAP or any other relationship with AAP, or any other facts or occurrences from the beginning of time up to and including the date and time Hancock executes this Agreement.

**4.      Confidentiality.** Hancock agrees that he will not divulge, communicate, or otherwise disclose, directly or indirectly, to any person or entity, either (i) the fact that the parties have settled Hancock's claims against AAP; (ii) the existence or terms of this Agreement, or the Agreement's negotiation, execution, or implementation; or (iii) Hancock's claims against AAP in the Nesseralla Litigation. If Hancock is questioned about the status of the litigation, he may respond that he is no longer pursuing the litigation. The parties agree that nothing in this paragraph prohibits Hancock from disclosing the settlement or the terms of this Agreement to his attorneys, accountants, or to any government agency as may be required by law, as long as he instructs his attorneys and accountants to keep the information confidential. The parties further agree that disclosure of this Agreement to the Court, should the Court require that it be filed publicly, will not be considered a breach of this Confidentiality provision.

**5.      Non-admission of Liability.** The parties acknowledge and agree that the settlement of Hancock's claims (i) does not constitute any admission of liability by AAP; (ii) does not constitute an

3

admission by AAP of the validity of any of Hancock's legal or factual contentions; and (iii) is solely for the purpose of avoiding the expense and inconvenience of further proceedings between the parties.

6.      **Entire Agreement.**  This Agreement represents the sole and entire agreement between the parties and supersedes any and all prior agreements, negotiations, or discussions between the parties and/or their respective counsel with respect to the subject matter covered in this Agreement.  The parties further agree that this Agreement may not be modified orally and that any modification of this Agreement must be in writing and signed by all parties.

7.      **Opportunity for Review/Right of Revocation.**  The parties acknowledge and agree that Hancock was provided a period of 21 days to review this Agreement before signing it.  Hancock also agrees that, if Hancock executes the Agreement prior to the expiration of the 21-day review period, Hancock waives the remainder of the 21-day review period.  In addition, the parties acknowledge and agree that Hancock has a period of seven days after the date Hancock signs this Agreement within which Hancock may revoke the Agreement.  Hancock agrees that AAP encouraged Hancock to seek and consult with adequate legal counsel regarding the terms of this Agreement prior to signing it.  The parties agree that AAP shall not be obligated to pay any portion of the Settlement Sum to Hancock if Hancock revokes any aspect of this Agreement within the seven-day revocation period.

8.      **Informed, Voluntary Signature.**  In entering into this Agreement, Hancock represents that, before executing this Agreement, he has completely read all the terms herein and that he fully understands and voluntarily accepts the terms after having the opportunity to consult adequate legal counsel of his choice.  Hancock further acknowledges and agrees that he has received a reasonable period of time to consider this Agreement and that the subsequent discovery of any facts by Hancock, whether or not existing on the date of this Agreement and no matter how material, shall have no effect on the validity of the Agreement.

9.      **Attorneys' Fees and Costs.**  Other than as set forth in Section 1, above, the parties agree to bear their own attorneys' fees and costs in connection with Hancock's claims in the Nesseralla Litigation, and in the preparation of this Agreement.  However, in the event that either party institutes an action to enforce any provision contained in this Agreement, the prevailing party shall be entitled to recover attorneys' fees and costs from the other party, including any fees and costs on any appeal(s).

10.     **Miscellaneous.**

A.      The parties agree that this Agreement shall be interpreted and enforced in accordance with Florida law.

B.      If one or more paragraph(s) of this Agreement are ruled invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision of the Agreement, which shall remain in full force and effect.

C.      The parties agree that, unless required by law or a court of competent jurisdiction, this document shall remain confidential and will not be used for any purpose other than enforcing its specific terms in any proceedings between the parties.  If this document must be filed in any court proceeding, the person seeking to file it will first seek to file the document under seal, and will only file it publicly if expressly prohibited from filing same under seal by the court.

PD.18018877.1

D.      As used in this Agreement, the term "Hancock" shall mean Peter Hancock, as well as his heirs, personal representatives, assigns, successors, agents, and attorneys.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as follows:

As to  Peter Hancock, this 11th day of September, 2015.

_____
Witness

_____
PETER HANCOCK

As to American Asphalt Paving, LLC, this _____ day of September, 2015.

AMERICAN ASPHALT PAVING, LLC

_____
Witness

By:_____

Its:_____

D.      As used in this Agreement, the term "Hancock" shall mean Peter Hancock, as well as his heirs, personal representatives, assigns, successors, agents, and attorneys.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as follows:

As to  Peter Hancock, this _____ day of September, 2015.

_____          _____
Witness                                                    PETER HANCOCK


As to American Asphalt Paving, LLC, this __11th__ day of September, 2015.

_____          AMERICAN ASPHALT PAVING, LLC
Witness                                                    By: _____

                                                               Its: _____
                                                                        C. F. O.